Our last case is in the interest of B.D.T., 5090606, Mr. Brumley for the Appellant, Ms. Brumley, and following appeal by the Respondent, I'm appointed Counselor by the lower court. With the Court's permission, I will return to the Respondent from time to time as D.T. does not roll off my tongue very well on the first name, that's initial, not much better. That's agreeable. That's fine. Broadly speaking, the issue for the Court is whether the people need to hear the recommendations of their own experts. Specifically, in the present case, the question is exceedingly narrow. Here, the question becomes whether the effort for F.C.U.R.T.S. by DCFS correlate with their experts, with their experts' recommendations, such that it justifies stripping D.T. of her parental rights, the fundamental rights. That's the narrow question this case presents. The Circuit Court found that D.T. failed to accord with the statute on three different elements of the statute, giving validation to her being removed of her parental rights. D.T. does not refute those findings. Rather, D.T. brings to bear the foundation of those findings, the bedrock, if you would. The record does not indicate that the various judges, and there were various judges, were derelict in their duty. It's easy to refer to those judges as derelict, nor does the record refer or reflect that the prosecution was derelict. That's not refuted. However, if you look at the transcript, perhaps you'll share my feeling that it wells up pathos and despondency. What the record truly reflects is that D.T. is an individual of inferior financial talents. What the record indicates is that D.T. is an individual with noted diminished mentalities. To me, if it pleases the Court, the record indicates that the basic utility brought out in this case is that one size is supposed to fit all, and never is that more poignant when desire is to be yoked with fortitude. Here, that utility is apparent. Needing, without question, needing mental health treatment, as the record shows, as the People's Exhibit brought out, at least weekly, mental health care. That there may well be desire, there may well be desire to conquer their failings, yet without more than minimal assistance, at best minimal assistance, they will never prevail and conquer because they will never muster up the fortitude. What was the mental health counseling that was recommended that she was never offered? Because obviously this is an injurious environment allegation. Correct. Mother continued to use drugs. Correct. Continued to stay addicted, even during visitations, and her visitation was terminated. So tell me what this mental health counseling was intended to provide and why it was not provided. What was the mental health counseling, what mental health counseling are you saying she was deprived of getting when they recommended it but never gave it to her? I'm saying what we're proffering, Your Honor, is that mental health counseling was to assist her to be able to, she needed a psychological evaluation such that her, let me just quote it, for her emotional and psychological functioning, separate and distinct from the counseling for substance abuse, which, beyond question, was an issue. But they were separate and distinct, as the People's Exhibit 1 brought up, that my inference was that they were to be separate and distinct, two separate counselors, not an amalgamation of such. The fact is inadequate assistance is simply inadequate. The judge rightfully relies upon the testimony of those who are at the vanguard of what was actually carried on, in this case, the case workers. Of course, the case, as I said, merely presents a question of whether the actions by DCFS were perfunctory and thus inadequate, or whether they were a genuine adherence to the spirit of return to home in 12 months, which was their goal. Was it a real, genuine adherence to that and therefore sufficient? Did she fail to complete her intake for this mental health counseling? Is that disputed? No, it is not disputed. She did, indeed, go for her psychological evaluation by a doctor, you probably know of Butcher Kosmiki, who is a psychologist and his assistant, and that report is in the attendance of the group. But his recommendation that we bring out is that this counseling should have been at least weekly. However, as the testimony of one of the case workers bring out, her answer was vague. I'm hesitant to use the word ambiguous because I want no S versions cast. But it was vague, at best, that what she understood was going on for six months. Twenty-six weeks. The case worker was not real clear what was going on for 26 weeks, which would have been, at a minimum, if it's to be at least weekly, 26 mental health counseling. Though we submit that Bert DoubleT was left virtually defenseless. And we ask again that we remember that this is a fundamental right. And that it's therefore proper that we question whether DCFS and their actions were sufficient. For example, to tell someone who has mental acuity that rounds on a good day, in the 20th percentile, to call if you need a ride, is that indeed sufficient? The people do disagree with DoubleT's appeal rationale. That they do not refute recommendations of the people's expert, nor do they refute the determination of DoubleT's mental acuity, or, hopefully as kindly stated, the lack of generosity. I believe that the record indicates that DCFS erred by not following their expert's recommendation of mental health counseling for DoubleT. I also acknowledge that DCFS may be overwhelmed and have a heavy case load, but when it becomes an individual case, it becomes an individual case. And I also believe that that error doomed DoubleT to failure. I believe the court has to support a problem of whether certain matters that are reasonably understood as having taken place did not. But those things that are reasonably accepted, simply understood as it happened, must lie to legitimize the global court's findings. And I do not agree with respect that within nine months of true, weekly mental health counseling, that a miracle will take place. But I do agree that actual mental health counseling, actual mental health counseling, within that brief amount of time, will clearly and convincingly obviate any question of the lower court's findings. The conclusion would say that there's no room for doubt. That it needs to be clear and convincing and leave no doubt. Thank you, counsel. We have an opportunity for rebuttal. Ms. Stacy. Thank you. Your honors, counsel, may it please the court. My name is Kelly Stacy, appearing today on behalf of the people. The crux of the respondent's appeal is that she was in need of mental health treatment and the state failed to provide that for her. And as counsel noted, there was a psychological evaluation that was set up for the respondent. She did, in fact, attend that psychological evaluation and mental health treatment was one of the recommended goals under the psychological evaluation. The respondent believes now that if she's only given nine more months to go back and complete her service plan, she's sure this time she can do it. What the record shows is that Ms. Lamb, the case worker at the time, informed the respondent that in order to receive mental health treatment, she needed to report to Franklin Williams and Human Services, which was the agency providing the substance abuse treatment, and that when she reported, she needed to let them know that she was there to complete an intake for a mental health assessment and whatever treatment was deemed to be needed to follow. The record shows that not only did the respondent fail to complete the mental health intake form, she also had poor attendance at the substance abuse treatment and she left the program against staff advice. This led Franklin Williams and Human Services to unsuccessfully discharge her from substance abuse treatment. At hearing on the state's motion determining parental rights, the state proved by clear and convincing evidence that the respondent was unfit and while only one statutory ground is necessary to prove unfitness, the state proved three of those grounds. The first ground was failure to maintain a reasonable degree of interest, concern, or responsibility as to her daughter's welfare. The trial court found the state proved that ground. Noncompliance with service plan objectives supports the finding of parental unfitness, and in this case, the respondent failed to complete her service plan. She continued to test positive for drugs including cocaine, benzodiazepine, and marijuana. Not only that, she admitted to using drugs twice a week during that time frame. All the while she's making this admission about using drugs, she's still denying that she needs substance abuse treatment. To me, that is the core issue of this case. The trial court also found that the respondent failed to make reasonable efforts to correct the conditions that led to the removal of the child. And while the respondent was the sole custodian caring for the minor in this case, she was arrested on drug charges and tested positive for marijuana and cocaine. Even after being repeatedly admonished by the trial court, continuing to tell the court she's going to do whatever she needs to do, she told the psychologist, I'll do whatever I need to do to get my daughter back, she failed to complete treatment, and she continued to test positive for drugs. The evidence thus supported the trial court's finding that the respondent failed to correct the conditions that led to the removal of her daughter in the first place. The last round, the trial court found that the respondent failed to make reasonable progress for the return of her daughter within nine months after adjudication and neglect. During that time frame, the respondent had two different caseworkers. It's clear from the record that both caseworkers met with the respondent at one time. They went through the goals with her at the case handoff. So to say she didn't understand what was necessary for her to do, at each and every hearing these things were brought out, and at each and every hearing the judge warned her that failure to comply with the service plan objectives and correct the conditions that required the child to be in care would result in termination of her parental rights. Was it ever identified what her mental health needs were? I don't know if we're talking about a level of intelligence of a 10-year-old or it's just that she had aberrations or visions and needed mental health counseling. What was the mental health counseling? From what I can gather, it didn't specify exactly what those issues were, but the record does show that she had had issues of domestic violence in the past where she was the victim of domestic violence. I'm assuming, and I could be proven wrong, that it has to do with that issue. With regard to her intellectual functioning, the psychologist found she functioned in the low range of intellectual functioning, did not determine she was mentally retarded, and she did only complete 11th grade and had not completed her GED by this time. But it appears as though her choice in parameters looked to be a problem identified by the psychologist, that she might need domestic violence. Oftentimes in these neglect and abuse cases, there's no record. Is there a record that the trial judge made sure she understood what her requirements were at the service plan hearing or the hearing to determine whether she was making reasonable progress? I don't believe that the judge ever went through each one of those objectives one by one with her, but the record is pretty clear in the transcripts that they discussed what kind of things she needed to do, and the judge specifically did mention to her that she needed to complete her substance abuse treatment. Did she acknowledge she understood that? Yes, she did. Yes, she did. I believe that's pointed out in the brief. I'm not sure what page that is pointed out on, but at the hearing on the motion to terminate parental rights, both of the caseworkers testified that the respondent had failed to complete the service plan and had not made substantial progress toward its completion. Again, the respondent's continued drug use prevented the court from returning the minor to the respondent. The evidence received by the trial court supports the finding of unfitness and cannot be considered to be against the manifest way of the evidence, and nothing raised by the respondent points to a different result. At stage two of the termination proceedings, the trial court found that it was in the best interest of the minor to terminate the respondent's parental rights. At that best interest hearing, the minor testified that she wanted a stable life and that life with the respondent was unstable. This particularly moving testimony, when you review that in the record, when the minor talked about people coming to the home at all hours of the day and night, she mentioned that there was no front door on the home, that the couch was placed in front of where the front door would have been, and the couch was where she, the minor, was to sleep. People would bang and knock on the couch to try to get the respondent to come to the door, and the minor testified that drug deals were going on in the home. The minor saw her mother using drugs at one point. The mother brought a purse filled with marijuana to a visitation. She tested positive at a visitation, and these are all things that the minor was keenly aware of. The minor testified that if she were returned to her mother, she could not be certain her mother would not still use drugs. It looks to me to be a case where the minor is trying to parent her mother, and that sort of thing is never going to happen when you're 11 to 13 years old. So it's clear that the evidence presented at both hearings, the termination and the best interest portion, that this minor deserved permanence and that her mother could not provide it for her. The people respectfully request the court affirm the trial court's order terminating respondent's parental rights and affirm the order authorizing the appointment of the guardian to consent to adoption. Thank you, Your Honor. Mr. Bromley, you have rebuttal. Thank you, Your Honor. Except for two in here, all of us remember the commercial, a mind is a terrible thing to waste. Many of you, I remember, would have seen it on Saturday morning. And a mind is a terrible thing to waste. You cannot reasonably expect individuals to correct other inadequacies if they can get their heads screwed on straight. That's the crux of this issue. We have a program at our level. We refer to it as LAP, L-A-P. And we do more. Apparently. I've seen the film, but I don't know personally. But we do more than tell someone that what you need to do, we stick with that person, lovingly and caringly, because we do not want them to fail. And we're not, we may be in the 20th percentile among our peers, but it's highly unlikely that we're in the 20th percentile of the general populace. And it's highly unlikely our IQ is in the realm of double T's. And yet we recognize the need for that personal, close attention. And we submit that therein lies the failure. Double T was doomed to failure by an inadequate, perfunctory action. For whatever reason it might be, overtaxed, overworked, too many cases, when it's an individual, a family, a state, we ask for a revamp and an opportunity to correct that insufficiency. Thank you.